IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MUGWORLD, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | CASE NO. 4:05cv441 |
| v. | § | |
| | § | |
| G.G. MARCK & ASSOCIATES, INC., | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF MUGWORLD'S SECOND MOTION FOR SUMMARY JUDGMENT**

Before the court is Plaintiff Mugworld's Second Motion for Summary Judgment (Dkt. 165). After having considered Plaintiff's motion and Defendant's response, the court is of the opinion that the motion should be denied.

### BACKGROUND

This case involves the sale of undecorated coffee mugs by Defendant G. G. Marck & Associates, Inc. ("Marck") to Plaintiff Mugworld, Inc. ("Mugworld"). Mugworld buys blank mugs from importers like Marck in order to decorate them at Mugworld's facilities in Gainesville, Texas through a process referred to as sublimation. Mugworld filed the underlying breach of contract and deceptive trade practices action alleging that Marck refused to refund its money after Mugworld returned mugs that Mugworld deemed unacceptable for the sublimation process. In response to Mugworld's allegations, Marck has asserted counterclaims of breach of contract and groundless DTPA suit.

1

In their summary judgment pleadings, both parties seek to have the court apply the principles of contractual satisfaction and accord to these facts. Both contend that there was an "accord" which superceded their original agreement regarding the sale of mugs and permitted Mugworld to return the mugs it ordered. The parties disagree, however, about the terms and effect of the accord.

Mugworld argues that Marck agreed to issue it "full credit" for the mugs it returned and that there has been no satisfaction of this agreement because Marck has not given "full credit" yet. Mugworld further argues that Marck subsequently revised the terms of their agreement by agreeing to issue a check for the amount of mugs returned and that Marck failed to satisfy that agreement as well. Therefore, Mugworld seeks summary judgment that an accord was reached between the parties and that Marck's failure to issue Mugworld either a credit or refund is a breach of the new agreement. Mugworld claims that the distinction between an agreement to "credit" Mugworld's account or "issue a settlement check" is immaterial to the determination of breach of the parties' agreement, since Marck did neither.

While Marck agrees that the parties reached an agreement that it would accept the returned mugs, Marck denies that its agreement provided for an immediate refund of the money Mugworld paid or for a credit without any offsets. Marck argues that its agreements to credit or refund Mugworld's money were conditioned on Mugworld's representation that the mugs were not in commercially acceptable condition. Marck claims that, contrary to Mugworld's representations at the time Marck agreed to accept the returned mugs, many mugs had no commercial defects. Marck therefore claims that the amount of any credit should be modified accordingly. Marck seeks a partial summary judgment finding that there was an accord and satisfaction and then requests that this court

hold an evidentiary hearing regarding the amount of credit Mugworld is due. Essentially, Marck argues that it cannot issue Mugworld a credit until the court holds an evidentiary hearing as to the value of offsets to which Mugworld is entitled.

### STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986). If the non-movant presents summary judgment evidence creating a genuine issue of material fact, summary judgment is not appropriate. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

### ANALYSIS

A review of the summary judgment evidence indicates that there are several fact issues in this case preventing summary judgment. According to the evidence before the court, Mugworld ordered a total of nine containers of mugs from Marck. After the first five containers were delivered, a dispute arose between Mugworld and Marck over the quality of mugs. At that time, Mugworld cancelled the four containers of mugs that it had not yet received. As to the mugs that had already been delivered, Marck agreed to arrange for their pick-up and also arranged for one of its employees to come to Mugworld's facilities to investigate the problems with the mugs. Bob Elliot, a salesman

3

for Marck, visited Mugworld on August 22, 2005 to examine mugs from the five containers of mugs delivered to Mugworld. Following that visit, on September 6, 2005, Gary Marck, Marck's owner, sent an email to Mugworld that stated:

> We are sorry that you were not pleased with the Rich Neely coated mugs. Please continue with your selection of the five containers. Keep those items that you can use. We will credit you for all the mugs not acceptable to you along with your cost of sorting. *See* Exhibit B to Dkt. 182.

While the agreement to allow Mugworld to return the mugs and "credit Mugworld" is undisputed, the meaning of the agreement appears to be very much at issue. Primarily, there is a fact issue as to whether "credit" meant a full credit or a credit with offsets. A September 13, 2005 email from Mugworld to Marck indicates the mugs would be returned for "full credit." *See* Plaintiff's Ex. 127 at page 6 of Dkt. 165.[1] But, subsequent correspondence indicates Marck intended to offset its costs and expenses before issuing Mugworld a credit. *See* Exhibit E to Dkt. 182.

Moreover, there is a fact issue as to whether Marck would credit Mugworld's account for future purposes or issue it a refund check. While the term "credit" usually suggests that at a customer's accounts would be credited for future purposes, some of the summary judgment indicates that the parties' use of the term "credit" in this case, in fact, meant a refund. For example, Marck's September 21, 2006 comment that "[m]aybe sometime in the future we can do some business together" in an email sent after it agreed to credit Mugworld suggests that Mugworld's monies would

---

[1]The court notes that some of the emails cited within the body of Mugworld's motion are not attached as separate summary judgment evidence. Because Marck has stated that it does not contest the authenticity or admissibility of these emails for these summary judgment proceedings, the court will consider them. However, the court cautions counsel to review Local Rule CV-56, requiring that evidence be made a separate attachment to a motion for summary judgment.

be refunded. *See* Exhibit I to Dkt. 182. However, a September 29, 2005 email from Marck to Mugworld requests information in order to "process the credit and apply on your account," suggesting Mugworld would have an open account with Marck with monies available for spending in the future. *See* Exhibit D to Dkt. 182. It is not clear from the summary judgment evidence what the parties intended.

Mugworld has argued that Gary Marck's September 28, 2005 response of "OK" to Mugworld's September 27, 2005 email demanding a statement and a refund check created a binding contract to send a full and immediate refund, not a credit. Marck responds that no contract for immediate payment in full was made because it objected to Mugworld's terms on October 6, 2005 — nine days after Mugworld's email requesting a refund.

Mugworld contends that, under Section 2.201 of the Texas Business and Commerce Code, Marck had 10 days to object to the issuance of a settlement check, and did not do so. Section 2.201 allows merchants to form a contract without the usual formalities "if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents ... unless written notice of objection to its contents is given within ten days after it is received." TEX. BUS. & COM. CODE § 2.201. Section 2.201(b) is, therefore, an exception to the statute of frauds.

The court finds that there are fact issues regarding whether Section 2.201 applies here. Whether a contract falls within the statute of frauds is a question of law for the court to determine. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 149 (Tex. App.– Houston [1st Dist.] 2005, pet. denied). But, whether the facts of a particular case fall within an exception to the statute of frauds,

5

including Section 2.201, involves questions of fact. *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 705 (Tex. App.– Houston [1st Dist.]1988, writ denied); *Adams v. H & H Meat Prods., Inc.*, 41 S.W.3d 762, 775 (Tex. App.– Corpus Christi 2001, no pet.). "Thus, it is usually for the jury to decide whether the parties were merchants, whether the writing was sent within a reasonable time, and whether the party receiving it had reason to know its contents. But if the writing itself does not, as a matter of law, constitute a confirmation, then the 'merchant's exception' in section 2.201(b) does not apply, and the contract is subject to the statute of frauds." *Adams*, 754 S.W.2d at 705.

The court finds that Mr. Marck's "OK" email, in light of the surrounding facts and circumstances, constituted a confirmation of the parties' agreement. However, there is a genuine issue of material fact as to whether Marck's subsequent correspondence constituted an objection to Mugworld's request for a refund check. The court notes that, despite Mugworld's minimizing of the distinction between the two, the promise of a credit and the promise of a refund have very distinct financial implications for the two parties involved. The distinction is material to the terms of the agreement and whether Marck's conduct constituted breach of that agreement.

Further, the court finds that there is a fact issue regarding whether Marck's agreement to issue a refund or credit was contingent upon whether Marck deemed the returned mugs to be commercially unacceptable. Initial correspondence suggests that Marck agreed to accept any mugs unacceptable to Mugworld, regardless of their acceptability in the general market place. *See* Exhibit B to Dkt. 182. But, later correspondence from both Mugworld and Marck suggests that the agreement to accept returned mugs was contingent on their commercial acceptability. *See* Exhibit E to Dkt. 182.

Thus, while the court agrees that the parties appear to have reached agreement regarding the return of the mugs, there are numerous fact issues regarding the terms of the new agreement, preventing summary judgment regarding breach (as requested by Mugworld) or satisfaction (as requested by Marck). The court cannot make a finding of breach before the fact issues regarding the terms of the agreement are resolved. The court also will not find that, as a matter of law, there has been a satisfaction here. Even under Marck's own construction of the agreement — that it agreed to credit, with offsets, Mugworld's account — Marck has not shown satisfaction because it has admitted that **no** credit has yet been issued to Mugworld. Both parties' request for relief is, therefore, denied. The issues must be resolved by a jury.

In light of these fact issues, the court also declines to rule on Mugworld's DTPA claim, and Marck's related counterclaim, at this time. It is for the jury to decide, after hearing all the evidence and testimony presented, whether the mugs Marck sold Mugworld were commercially acceptable, whether this commercial acceptability was a term of the parties' agreement, and whether any misrepresentations were made by either party in the course of the negotiations regarding the return of the mugs and their commercial acceptability.

Therefore, because there are genuine issues of material fact as to Mugworld's breach of contract and DTPA claims, the court declines to grant summary judgment in favor of either party. Mugworld's second motion for summary judgment (Dkt. 165) is, therefore, denied.

**IT IS SO ORDERED.**

**SIGNED this the 23rd day of August, 2007.**

_Richard A. Schell_
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE