**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MUGWORLD, INC., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | CASE NO. 4:05cv441 |
| v. | § | |
| | § | |
| G.G. MARCK & ASSOCIATES, INC., | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF MUGWORLD'S**
**MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY JUDGMENT AND**
**GRANTING THIRD-PARTY DEFENDANT RICH NEELY'S MOTION TO DISMISS**

Before the court are Plaintiff Mugworld's Motion to Dismiss Defendant Marck's Counterclaims of Lanham Act Violations, Unfair Competition and Fraud (Dkt. 55), Third-Party Defendant Rich Neely's Motion to Dismiss Marck's Second Amended Counterclaims (Dkt. 95), and Mugworld's Motion for Partial Summary Judgment (Dkt. 94). After having considered the motions and Marck's responses, the court is of the opinion that Marck's claims against Mugworld and Neely for violations of the Lanham Act, unfair competition, conspiracy, fraud, and fraud in the inducement should be dismissed.

**BACKGROUND**

Defendant and Counter-Plaintiff G. G. Marck & Associates, Inc. ("Marck") is in the business of marketing and selling undecorated coffee mugs ("blankware") to customers in the sublimation industry who apply artwork to the blankware and then sell them to consumers. Plaintiff and Counter-Defendant Mugworld, Inc. ("Mugworld"), which is in the sublimation business, has

1

purchased blankware from Marck.  Mugworld is not an importer of mugs.  Rather, it buys blank mugs from importers, like Marck, in order to decorate them at its facilities in Gainesville, Texas.

Mugworld has filed the underlying breach of contract and deceptive trade practices action alleging that Marck refused to refund its money after Mugworld returned blankware that it deemed commercially unacceptable for the sublimation process.  Marck, in turn, has asserted the following counterclaims against Mugworld: breach of contract, groundless DTPA suit, violations of the Lanham Act, unfair competition, conspiracy, and fraud and fraud in the inducement.  Marck has also alleged that third-party defendant, Rich Neely, is liable as a conspirator with Mugworld for all of these acts.

Other than its breach of contract, groundless DTPA, fraud, and fraud in the inducement claims, the remainder of Marck's claims are based on Mugworld's apparent purchase of blankware from some of Marck's competitors, Photo U.S.A. Corporation, North American Investments Corp., and Photo USA Electronic Graphic, Inc., which are all owned or operated by James Peng and his wife ("the Peng Companies").  The Peng Companies have not been made parties to the underlying suit, but form the basis of most of Marck's claims against Mugworld and Neely.[1]

Both Marck's and the Peng Companies' mugs are manufactured in China where they are coated with a material that will facilitate sublimation.  Third-party defendant, Rich Neely, manufactures and sells the coating and coating machines used by the Peng Companies and some of the coating used by Marck.  After the mugs are coated, they are then imported to the United States

_____

[1]The record indicates, however, that Marck has filed a separate lawsuit against Peng in Ohio, asserting many of the same claims as are made here.

2

for purchase by, among others, Mugworld.

In its this suit, Marck alleges that, while its mugs designate their country of origin as China, none of the mugs produced by the Peng Companies or decorated by Mugworld do.  Marck further alleges that the mugs imported by the Peng Companies are made using forced or prison labor. Additionally, Marck alleges that the Peng Companies regularly ship overweight containers from China and under-report values of goods to reduce their importation tariffs.  Marck alleges that Mugworld and Neely conspired with the Peng Companies in all of these alleged wrongdoings and seeks damages and injunctive relief as a result.

For purposes of its claims here, Marck has not alleged that it purchases any mugs from Mugworld for use in its blankware business.  Marck has also not alleged that it is a direct competitor of Mugworld or Neely.  Rather, Marck's claims are based on Mugworld's purchase of mugs from the Peng Companies.  Marck claims that Mugworld's use of mugs made by the Peng Companies has caused it to lose sales and suffer a decrease in its profit margins.

 In their motions to dismiss and motion for summary judgment, Mugworld and Neely seek to have Marck's Lanham Act and unfair competition claims dismissed because Marck has no standing to bring them.  Mugworld further argues that Marck's conspiracy and fraud claims fail.  The court agrees that, whatever grievances Marck may have against the Peng Companies for their alleged conduct, it does not have standing to pursue them vicariously through Mugworld and Neely in this case.

## MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT STANDARD

Mugworld has filed both a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and motion for summary judgment under Federal Rule of Civil Procedure 56, seeking to dismiss Marck's counterclaims.  Neely has filed a motion to dismiss based on the same arguments.[2]

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  The court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In addition, all reasonable inferences are to be drawn in favor of the plaintiff's claims.  *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  However, dismissal for failure to state a claim does not require the appearance that, beyond a doubt, the plaintiff can prove ***no set of facts*** in support of his claim that would entitle him to relief.  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1968 (2007).  Rather, to survive a 12(b)(6) motion to dismiss, a plaintiff must show, after adequately stating his claim, that it may be supported by some set of facts consistent with the allegations in the complaint.  *Id.*

When considering a 12(b)(6) motion, the court must limit its inquiry to the facts stated in the complaint.  *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).  If the court considers extrinsic evidence, the motion is converted into a motion for summary judgment and summary judgment standards will apply.  FED. R. CIV. P. 12(b).

---

[2]Neely's motion to dismiss does not state the rule under which it brings the motion, but Marck has responded to it under a 12(b)(6) standard, so the court will analyze it accordingly.

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999).  The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir. 2001).  In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case.  *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14).  Once the moving party

5

makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

Here, the parties have filed both a motion for summary judgment and motions to dismiss. As shown below, taken in tandem, these motions dispose of Marck's claims against Mugworld and Neely for violations of the Lanham Act, unfair competition, conspiracy, fraud, and fraud in the inducement.

## STANDING

Mugworld and Neely have first challenged Marck's standing to assert certain claims against them. Marck has the burden of proof and persuasion as to the existence of standing as to its claims under the Lanham Act, claims of unfair competition, and fraud. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992); *Int'l Ass'n of Machinists & Aerospace Workers v. Goodrich Corp.*, 410 F.3d 204, 211-12 (5th Cir. 2005). In determining standing, the court must undertake a "careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1867, 164 L. Ed.2d 589 (2006) (quoting *Allen v. Wright*, 468 U.S. 737, 752, 104 S. Ct. 3315, 82 L. Ed.2d 556 (1984)). The question of standing involves the determination of whether a particular litigant is entitled to invoke the jurisdiction of the

6

federal court in order to decide the merits of a dispute or of particular issues. *Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11, 124 S. Ct. 2301, 2308, 159 L. Ed.2d (2004).

Standing has both constitutional and prudential aspects. *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 560 (5th Cir. 2001). To satisfy the constitutional standing requirement, "a plaintiff must show (1) an injury in fact (2) that is fairly traceable to the actions of the defendant and (3) that likely will be redressed by a favorable decision." *Id.* Thus, to have constitutional standing, Marck must show that it has suffered some actual or threatened injury as a result of the allegedly illegal conduct of Mugworld and Neely. *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 98, 99 S. Ct. 1601, 1607-08, 60 L. Ed.2d 66 (1979). Additionally, there must be a causal connection between Marck's alleged injury and Mugworld's and Neely's alleged conduct, and Marck must show that this injury is likely to be redressed should the court grant the relief requested. *Allen,* 468 U.S. at 751, 104 S. Ct. at 3324.

Even if a court determines that the litigant has satisfied the constitutional aspects of standing, it must also consider whether any prudential limitations restrain it from exercising its judicial power. *Gladstone Realtors,* 441 U.S. at 99, 99 S. Ct. at 1608. Prudential standing consists of judicially created limits to standing that "concern whether a plaintiff's grievance arguably falls within the zone of interests protected by the statutory provision invoked in the suit, whether the complaint raises abstract questions or a generalized grievance more properly addressed by the legislative branch, and whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties." *Procter & Gamble Co.*, 242 F.3d at 560. Therefore, to sustain its claims of unfair competition and Lanham Act violations, Marck must also show that it is asserting

7

its own rights and protecting its own interests in making its claims against Mugworld and Neely.

## Marck's Claims Based on Violations of the Tariff Act

Marck's counterclaim against Mugworld (and corresponding claim against Neely) is based in part on a complaint that Mugworld uses mugs that are produced by prisoners in Chinese labor camps.  Marck relies on provisions in the Tariff Act of 1930 in its efforts to hold Mugworld and Neely liable.  Marck lacks standing, however, to assert any claims seeking to hold Mugworld and Neely liable for the Peng Companies' alleged use of prison labor in violation of the Tariff Act.

Marck contends that it is not bringing a direct claim under the Tariff Act, but merely relies on the Tariff Act in support of its Lanham Act claim to show the applicable standard of care. Marck's pleadings, however, are not so clear.  Because Marck's claims appear to fall directly under the prohibitions of the Tariff Act, the court will address Marck's standing to make such allegations of forced labor based on violations of the Tariff Act.

It is clear that Marck does not have an actual injury of the type intended to be protected by the Tariff Act.  *McKinney v. U.S. Dept. of Treasury*, 614 F. Supp. 1226, 1233 (Ct. Int'l Trade 1985). First, the Tariff Act does not automatically ban the importation of all goods produced by forced labor.  *Id*.  The Act clearly states that, if domestic production of a good is insufficient to meet the demand in the United States, then that imported good may be allowed into the United States, despite the fact that it may be produced through forced labor.  19 U.S.C.A. §1307 (prohibition on forced-labor goods *does not* apply to "goods, wares, articles, or merchandise so mined, produced, or manufactured which are not mined, produced, or manufactured in such quantities in the United States as to meet the consumptive demands of the United States").   Moreover, while 19 U.S.C.A.

§1307 allows for the prohibition of importation of certain forced labor products, goods which are the product of a national system of forced labor are not barred from entry into the United States unless the executive branch declares them to be the product of forced labor. *Assoc. Imports, Inc. v. Int'l Longshoremens' Assoc.*, 609 F. Supp. 595, 598 (S.D.N.Y. 1985); *McKinney*, 614 F. Supp. at 1230-33.

A "private plaintiff may not bring a suit based on a regulation against a defendant for acts not prohibited by the text of the statute." *Alexander v. Sandoval*, 532 U.S. 275, 285-86, 121 S. Ct. 1511, 1519, 149 L. Ed.2d 517 (2001) (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173, 114 S. Ct. 1439, 128 L. Ed.2d 119, (1994)).  Marck has not alleged, nor has it offered any evidence to show, that the mugs used by Mugworld were declared a violation of the Tariff Act through the administrative procedures set forth under 19 C.F.R. §§12.42-12.44. *Int'l Labor Rights Fund v. U.S.,* 391 F. Supp.2d 1370, 1370-71 (Ct. Int'l Trade. 2005); *Assoc. Imports, Inc.*, 609 F. Supp. at 598.  Therefore, it cannot have standing to assert the claims it makes here.

Moreover, even if it were able to show that the Peng Companies' actions were declared violations of the Tariff Act, Marck has not shown how it is the sort of entity who has a cognizable interest under the Tariff Act's provisions. *See McKinney*, 614 F. Supp. at 1235 (holding that because Tariff Act does not provide a legally cognizable interest to consumers to prevent the entry of forced labor goods into the United States, consumer plaintiffs did not have standing to bring claims under it).  As noted by the Court of International Trade, the Tariff Act does not create "an enforceable moral interest to challenge" the executive branch's decision to admit goods made through forced

9

labor into the country.  *Id.*  at 1236.

Moreover, Marck's argument that it is relying on the Tariff act in order to prove its Lanham Act claim does not cure its lack of standing.  The Fifth Circuit disapproves of any private actions which are merely efforts to predict factual determinations by administrative agencies charged with the duty of interpreting and enforcing technical laws such as the Tariff Act.  *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 374 (5th Cir. 2002).  And a court "should not allow a party under the guise of a Lanham Act claim to create a private right of action where none exists under the regulatory or statutory scheme."  *York Group, Inc. v. Horizon Casket Group, Inc.*, 459 F. Supp.2d 567, 579 (S.D. Tex. 2006) (citing *IQ Prods. Co.*, 305 F.3d at 374).  The Tariff Act does not provide for a private right of action, and Marck's attempt to bring the Tariff Act claim as a Lanham Act claim fails.  Marck's claims regarding the shipment of overweight containers and the under-reporting of the value of imported goods likewise fail because Marck has no right to seek redress for these either.

Therefore, any claims Marck has against Mugworld and Neely that rely on alleged violations of the Tariff Act should be dismissed for failure to state a claim.

**Marck's Lanham Act and Unfair Competition Claims**

Mugworld and Neely also argue that Marck lacks standing to bring claims against them under the Lanham Act.  In its complaint, Marck claims that Mugworld has violated the Lanham Act, 15 U.S.C. §1125(a), by failing to mark its products with a designation of the county of origin.  Marck also argues that Mugworld's advertisement that it is licensed by the Licensing Resource Group ("LRG") is false and misleading to Mugworld's customers because Mugworld's use of mugs

allegedly created through prison labor is a violation of Mugworld's licensing agreement with LRG. According to Marck, a representation that a group has been approved by the LRG constitutes a "seal of approval" for consumers and is an assurance that prison labor was not used in the manufacture of the subject good. Marck alleges that Mugworld's actions caused it to lose sales and created in the mind of its consumers "the false impression that the Peng/Mugworld wares are a 'superior' American-made product when they are actually of Chinese origin and are the product of prison labor." *See* Marck's Second Amended Counterclaim, ¶ 3.28 (Dkt. 76).

Marck never purports to be a consumer of Mugworld products, and, other than for the purposes of this lawsuit, it does not appear that Marck ever purchased any mugs from Mugworld. "The focus of the Lanham Act is on commercial interests that have been harmed by a ***competitor's*** false advertising." *IQ Prods. Co.*, 305 F.3d at 375 (quoting *Procter & Gamble Co.*, 242 F.3d at 563 (emphasis added)). Essentially, the Lanham Act seeks to prohibit competitors from engaging in unfair conduct involving any sort of actual or potential deception of their shared customers.

Under the Lanham Act, "[a]ny person who, or in connection with any goods...uses in commerce...any false designation of origin...which (A) is likely to cause confusion...as to the origin...of his or her goods, or (B) in commercial advertising or promotion, misrepresents the ...geographic origin of his or her or another person's goods...shall be liable in a civil action to any such person who believes he or she is likely to be damaged by such act." 15 U.S.C.A. § 1125(a)(1). The clear language of the statute allows for a person who "believes he or she is likely to be damaged" by unfair competition to bring a claim under it. Therefore, unlike Marck's claims arising out of the Tariff Act, a private cause of action does exist. In this regard, Marck has sufficiently pled

11

a cause of action.  However, Marck lacks standing to bring a Lanham Act claim.

Mugworld has also filed a summary judgment motion as to Marck's ability to raise a Lanham Act claim under these facts.  As shown below, the summary judgment evidence indicates that there is no genuine issue of material fact with respect to Marck's Lanham Act claims against Mugworld, and therefore Mugworld's Motion for Partial Summary Judgment should be granted.

**Marck's Lack of Standing to Bring Lanham Act Claims Against Mugworld and Neely**

Mugworld and Neely have challenged Marck's standing to bring its counterclaims of unfair competition and violations of the Lanham Act.  As noted above, standing has two components (1) constitutional and (2) prudential.  *Procter & Gamble Co.*, 242 F.3d at 560.  To have constitutional standing, Marck was required to show that it had an injury and that its injury was traceable to Mugworld's and Neely's purported conduct.  *Id*.  Marck has not demonstrated an injury traceable to Mugworld or Neely, and therefore it has no constitutional standing to bring its Lanham Act and unfair competition claims.

Significantly, Marck has not offered any evidence to show how its sales or profits have been affected by Mugworld's purchase of the Peng Companies' mugs or Neely's coating of the Peng Companies' mugs.  Indeed, Marck's owner testified that he did not lose any customers as a result of Mugworld's removal of or failure to use "made in China" stickers or alleged purchase of prison-made mugs.  *See* Exhibit A to Mugworld's Motion for Partial Summary Judgment (Dkt 94).  Marck has also failed to show how it was injured by the Peng Companies' shipment of allegedly overweight containers or under-reported values of goods.  And, again, the Peng Companies are not even parties to this suit.  How Mugworld's use of prison-made mugs which failed to designate a country of origin

would ever directly affect Marck is unclear.

Further, there is no competent summary judgment evidence that Marck and Mugworld (or Marck and Neely) are, or have ever been, competitors.[3]  Marck manufactures and imports blank mugs, Neely coats (or provides the coating or coating machines to coat) them, and Mugworld decorates them.  Marck and Mugworld do not deal with the same customers – in fact, Mugworld is more a customer of Marck's than a competitor.  Marck has not shown how this is sufficient to give it constitutional standing to bring its statutory and common law claims of unfair competition.

For these reasons, Marck also lacks prudential standing to bring its Lanham Act and unfair competition claims.  To determine whether a plaintiff has prudential standing under the Lanham Act, a court should look at the following factors: (1) whether the injury is the type of injury that Congress sought to redress in providing a private remedy; (2) the directness or indirectness of the asserted alleged injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.  *Logan v. Burgers Ozark Country Cured Hams, Inc.*, 263 F.3d 447, 460 (5th Cir. 2001).

Marck is not a Mugworld consumer which has been directly injured by the alleged wrongdoing, and Marck's interest in any consumer's complaints is simply too remote to justify

---

[3]While there is evidence in the record indicating that Mugworld has considered becoming a blankware competitor, there is no evidence that Mugworld and Marck have, to date, competed for any customers or that Mugworld was in the blankware business such that it was a Marck competitor during the time period at issue here.  Further, although there is some evidence that Mugworld has sold surplus undecorated mugs in the past, it does not appear Mugworld is in the business of making such sales, and Marck has not shown how any of these sales of surplus mugs damaged it.

standing.  Marck's damages are speculative, at best.  Marck cannot identify, not to mention quantify, any lost sales or decrease in profits attributable to Mugworld or Neely.  *See* Exhibit A to Mugworld's Motion for Partial Summary Judgment (Dkt 94).  "This is not the case of one competitor's directly injuring another by making false statements about his own goods and thus inducing customers to switch from a competitor."  *Procter & Gamble Co.*, 242 F.3d at 563.  Therefore, although Marck could have standing to bring a private action under the Lanham Act, without any traceable injuries, it does not have standing under these facts.

Marck's common law claims of unfair competition similarly require a showing of "an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business."  *Taylor Pub. v. Jostens, Inc.,* 216 F.3d 465, 486 (5th Cir. 2000).  Marck has failed to show how Mugworld's and Neely's alleged conduct interfered with its business.  As such, Marck has no standing to bring any claims of unfair competition, statutory or otherwise.

This court also agrees with Mugworld that, under the facts of this case, any complaint based on a claim that Mugworld's products are made with the use of "prison labor" would belong to the United States (as discussed above) or the Licensing Resource Group, with whom Mugworld apparently has a contractual agreement not to use forced or prison labor.  Moreover, because Marck is not a customer of Mugworld, it is unclear how it would have relied on any representation by Mugworld regarding its licensing status or LRG approval to its detriment.  Marck cannot allege any damage as a result of this conduct and therefore lacks standing to bring these claims as well.

**No Genuine Issue of Material Fact as to Marck's Lanham Act Claims**

Finally, even if Marck were able to show that it had standing under these facts, the evidence indicates that there is no genuine issue of material fact as to several of the elements of Marck's Lanham Act Claim.  To sustain a false advertising and false designation of origin claim under the Lanham Act, a plaintiff must show (1) the defendant made a false statement of fact about its product in a commercial advertisement; (2) the statement actually deceived or had a tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it is likely to influence the purchasing decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result.  *IQ Prods. Co.*, 305 F.3d at 375; *Logan*, 263 F.3d at 462; *York Group, Inc.*, 459 F. Supp.2d at 575-76.

Without injury and proof of reliance on Mugworld's and Neely's alleged representations, Marck has no Lanham Act claim.  The mere failure to mark an imported good with its country of origin is not a *per se* violation of the Lanham Act.  *York Group, Inc.,* 459 F. Supp.2d at 580.  At most, evidence of improper designation of origin is evidence in support of a Lanham Act "false designation of origin" claim.  *Id.* at 579-80.  Because Marck has no evidence of any damages caused to it – other than allegations of likely harm – its Lanham Act claim fails.  *IQ Prods. Co.*, 305 F.3d at 375.

Marck's Lanham Act claim also fails as a matter of law because Marck has not offered any evidence to indicate that Mugworld's acts actually deceived or had a tendency to deceive consumers about the quality and origin of the mugs and caused consumers to buy Mugworld's mugs over a competitor's.  Other than unsubstantiated allegations of the potential effects of Mugworld's

"Gainesville, Texas U.S.A." label, Marck has offered nothing to show that any of Mugworld's customers have been deceived or that Mugworld has actually profited from the alleged conduct. "[W]here a plaintiff who has brought a Lanham Act claim for false advertising has failed to present evidence that the defendant benefitted from the alleged false advertising, the plaintiff will not be permitted to recover any of the defendant's profits" in a Lanham Act claim. *Logan*, 263 F.3d at 465 (5th Cir. 2001).

Finally, Marck's customers are not the same as Mugworld's, and Mugworld has failed to allege how *it* has lost any of *its* customers as a result of Mugworld's use of these mugs.  It seems that Marck's complaint, if it has one, lies with its direct competitors, the Peng Companies.  More importantly, no party contends that Mugworld imports the mugs.  It is Marck's competitors who produce and import the mugs, and it is they against whom Marck should lodge any claims relating to importing.

Mugworld's motion for summary judgment regarding Marck's claims under the Lanham Act and common law claim of unfair competition must, therefore, be granted.  Marck's request for injunctive relief is likewise denied.  *Logan*, 263 F.3d at 465 (upholding denial of injunctive relief where plaintiff failed to show it would suffer irreparable harm).

**Marck's Fraud & Fraud in the Inducement Claims**

In addition to seeking summary judgment on Marck's claims arising out of Mugworld's use of the Peng Companies' mugs, Mugworld also seeks summary judgment on Marck's claims of fraud and fraud in the inducement.  Marck claims that Mugworld made misrepresentations regarding Peng's price quote to Mugworld in order to get Marck to agree to a sales price for the mugs it sold

to Mugworld.  The court grants Mugworld's motion and dismisses Marck's claims of fraud and fraud in the inducement.

To sustain its fraud claims, Marck must show that (1) Mugworld made a material representation that was false; (2) Mugworld knew the representation was false or made it recklessly; (3) Mugworld intended to induce Marck to act upon the representation; and (4) Marck actually and justifiably relied upon the representation. *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).  In its summary judgment motion, however, Marck has failed to cite to any summary judgment evidence to show that Mugworld's assertion about Peng's price quote of $0.90 per mug was false.  It is Marck's burden, as a summary judgment respondent, to cite to evidence indicating there is a genuine issue of material fact as to its fraud claims. *Ragas*, 136 F.3d at 458. Marck has not sustained this burden.

This court is not expected to "scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact before entering summary judgment." *Jones v. Fountain,* 121 F. Supp.2d 571, 572 (E.D. Tex. 2000) (citing E.D. Tex. Local R. 56(d)).  "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514.  Moreover, the local rules of this court require that summary judgment pleadings be supported by appropriate citations to the summary judgment evidence, referencing specific excerpted evidentiary materials attached to the pleading with page and line numbers and with highlighting, as appropriate. *See* E.D. Tex. Local R. CV-7(b), CV-56(b)-(d).  Marck has not done this in its response to Mugworld's

argument regarding its fraud claims, and, a reasonably diligent review of the summary judgment record contains no evidence to support Marck's contention that Mugworld's price quote was false.[4] Mugworld's motion for summary judgment is therefore granted, and Marck's fraud and fraud in the inducement claims are denied.

Since Neely was not part of these contract negotiations, and there is no evidence or even factual allegations that he conspired with Mugworld during these negotiations, any fraud claims asserted against him are also dismissed.

## Marck's Conspiracy Claims

Since Marck cannot establish standing to assert any of the underlying torts, it cannot create standing by alleging conspiracy.  In Texas, for there to be a conspiracy, there must be an unlawful, overt act in furtherance of the conspiracy.  *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex. 1983).  The elements of the cause of action must be taken in the context of this basic definition stating that the object to be accomplished, or the means by which it is accomplished, is unlawful. *See id.*  Thus, the "gist of a civil conspiracy" is the injury that is intended to be caused. *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.,* 435 S.W.2d 854, 856 (Tex. 1968). Here, not only has Marck failed to show that any of Mugworld's or Neely's own acts were unlawful, they have not shown how either knowingly participated in any scheme with the Peng Companies. One "cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of." *Id.* at 857; *see also Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719-20 (Tex. 1995).

---

[4]In fact, the summary judgment record contains testimony from Mr. Peng that he sold mugs to Mugworld for $0.90 each.  *See* Exhibit B-3 to Marck's Response in Opposition to Motion for Partial Summary Judgment (Dkt. 123) at page 176.

There is no evidence in the record to indicate that Neely or Mugworld were involved with or agreed to be involved with the labeling of Peng's products, their manufacture, their import duties, or their highway shipments in the United States.  Therefore, Marck's conspiracy claims are also dismissed.

### NEELY'S MOTION FOR COSTS

Rich Neely has filed a Motion for Costs in conjunction with his Motion to Dismiss, arguing that Marck should be sanctioned for bringing claims against him (Dkt. 134).  The court declines to award such sanctions to Neely.  *See* FED. R. CIV. P. 11.

Courts evaluate an attorney's compliance with Rule 11 using an objective standard of reasonableness under the circumstances.  *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 873 (5th Cir.1988) (en banc).  Here, the court has dismissed Marck's claims against Neely because it finds there is either no standing to assert them or no evidence to support them.  It does not appear, however, that Marck's claims were presented for an improper purpose or made in bad faith.  *See* FED. R. CIV. P. 11.  While Marck's attorneys are not relieved from individual liability based solely upon their claims of good faith, *Jenkins v. Methodist Hosp. of Dallas, Inc.,* 478 F.3d 255, 264 (5th Cir. 2007), Rule 11 allows parties to make "nonfrivolous argument[s] for the extension, modification, or reversal of existing law or the establishment of new law." FED. R. CIV. P. 11(b)(2).

 As indicated by the depth of this opinion, the viability of Marck's counterclaims requires a complicated analysis and does not appear to have been made in bad faith.  A "party that predicates its legal claim on a controversial and unsettled legal theory should not face sanctions" *Procter & Gamble Co.,* 242 F.3d at 531-32.   Therefore, costs as sanctions are not warranted, and Neely's request is denied.  The court notes, however, that this ruling does not preclude Neely from seeking

19

costs upon entry of final judgment in accordance with Rule 54.

### NEELY'S MOTION IN LIMINE

Because Marck's claims against Neely are dismissed, his motion in limine (Dkt. 160) is moot.

### MUGWORLD MOTION TO DESIGNATE RESPONSIBLE THIRD PARTIES

In response to Marck's counterclaims, Mugworld filed a Motion to Designate Responsible Third Parties, seeking to designate one of the Peng Companies, PhotoUSA Corp., Ltd., as a responsible third party (Dkt. 54).  Because the court has dismissed the claims for which Mugworld seeks to hold PhotoUSA Corp. Ltd. responsible, Mugworld's motion is moot and it is not necessary to reach its merits.  The motion to strike filed by Marck in relation to this motion (Dkt. 67) is likewise also moot.

### MUGWORLD'S MOTION TO STRIKE MARCK'S EXPERT

The court has ruled in part on Mugworld's Motion to Strike Marck's experts.  The court notes that it has not yet ruled on Mugworld's motion to strike expert testimony pertaining to the use of prison labor, the designation of the mugs' origin, or the effect of an LRG licensing agreement. Because Marck's claims of Lanham Act violations and unfair competition are dismissed, there is no need for the court to determine whether Marck's experts are qualified to render such testimony or whether their opinions are reliable and relevant to those claims.  To the extent the court did not issue a ruling on the record during the hearing on July 9, 2007 (as embodied in the corresponding order), the remainder of Mugworld's Motion to Exclude the Testimony of Defendant's Experts, Gary Marck, Robert Elliot, Kerry Turner, and Harry Wu (Dkt. 93) is moot.

20

## CONCLUSION

Therefore, as discussed more fully above, the court GRANTS Neely's Motion to Dismiss (Dkt. 95).  The court similarly GRANTS, in part, Mugworld's Motion to Dismiss as to any claims arising under the Tariff Act (Dkt. 55).  Further, to the extent the relief sought was not already granted in the ruling on the motion to dismiss, the court GRANTS Mugworld's Motion for Partial Summary Judgment (Dkt. 94).  Marck's claims against both Mugworld and Neely for violations of the Lanham Act, unfair competition, conspiracy, fraud, and fraud in the inducement are therefore dismissed in their entirety.

Further, the court denies Neely's Motion for Costs (Dkt. 134).

As a result of the above ruling, Mugworld's Motion to Designate Responsible Third Parties (Dkt. 54), Marck's Motion to Strike (Dkt. 67), and Rich Neely's Motion in Limine (Dkt. 160) are moot.  For the same reason, the court's outstanding ruling on the remainder of Mugworld's Motion to Exclude the Testimony of Defendant's Experts, Gary Marck, Robert Elliot, Kerry Turner, and Harry Wu (Dkt. 93) is similarly moot.

**IT IS SO ORDERED.**

**SIGNED this the 23rd day of August, 2007.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE